1

2
Hon Robert S. Lasnik
3
MOTION DATE: SEPTEMBER  9 ,2016

4

5

6
UNITED STATES DISTRICT COURT
7
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
8

9 | QOTD FIRST INVESTMENT LTD,          )
  |                                    )
10|            Plaintiff,              )   **NO.16-cv-00371 RSL**
  |                                    )
11|     vs.                            )
  |                                    )
12| MARY STARR ET AL,                  )   **MOTION TO DISMISS, OR FOR A**
  |                                    )   **MORE DEFINITE STATEMENT**
13|            Defendant.              )
  |                                    )   **SONNY NGUYEN**
14|                                    )
  |                                    )
15| _____)

16 **SUMMARY**

17          Defendant Sonny Nguyen moves the Court for an order to dismiss  Plaintiff

18 QOTD's  First  Amended Complaint  (Dkt 16) pursuant to Fed R. Civ P. 12(b)(6) for failure to

19 state a claim upon which relief can be granted.  QOTD fails to plead facts supporting its claim

20 that Nguyen is an infringer.  QOTD also fails to state a claim under well-known secondary

21 liability theories of infringement as developed by the Courts.  QOTD improperly uses the

22 complaint process as a discovery tool in violation of  Fed. R. Civ P. 11.

23          In the alternative, Nguyen seeks an order requiring QOTD to file a more definite

24 statement pursuant to Fed. R. Civ P. 12(e).

25 MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle   WA 98165
(206)361-4840

1

2

3

**INTRODUCTION**

4

QOTD's "pay-up-or-else" business model has become popular in this and other judicial

5

districts.[1] QOTD's First Amended Complaint ("Complaint") contains mostly irrelevant material

6

cut-and-pasted from other lawsuits filed in this and other jurisdictions.  The Complaint describes

7

how a "swarm" of people using commonly available peer-to-peer software  ('BitTorent') on the

8

internet combine to download bits or pieces of a movie "*Queen of the Desert*" from each other,

9

in order to copy or view it in its entirety.

10

11

QOTD improperly uses the federal court system.  QOTD files complaints and amended

12

complaints as a discovery mechanism.  QOTD attempts to force IP subscribers to disclose who

13

use the internet by suing them then expecting them to defend themselves until they disclose who

14

the guilty party really is, if they know or---pay up if they don't know. This practice violates Fed.

15

R. Civ. P. 11.   This is like suing a passenger or owner of a vehicle to learn the name of the

16

driver responsible for a traffic accident.

17

QOTD  claims to have identified  IP addresses of a  BitTorent swarm with their general

18

geographic location.  Plaintiff then prepares and files an Original Complaint against various John

19

Does having those IP addresses. Plaintiff  then motions for an *ex parte* order directed to their

20

Internet Service Provider  ("ISP") in order to obtain the actual names and addresses of the

21

subscribers with these IP addresses.

22

23

[1] https://torrentfreak.com/100000-p2p-users-sued-in-us-mass-lawsuits-110130/

24

25

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Page 2 of 13

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle   WA 98165
(206)361-4840

Here an order was obtained, *ex parte* and served upon COMCAST, Nguyen's ISP. COMCAST presumable responded with the names and addresses of its subscriber information which includes  the name of Sonny Nguyen and his billing address.

### THE 1st AMENDED COMPLAINT

QOTD makes broad and conclusionary allegation that the Defendants---including Sonny Nguyen--- engaged in Copyright Infringement through use of an online distribution system by participating in a swarm and/or reproduced and/or distributed a "seed file" of its video-production, "*Queen of the Desert*" directly or with other defendants. (First Amended Complaint) page 12, lines 18-21).  QOTD identified Sonny Nguyen as the subscriber assigned by COMCAST having the IP address used at the time of the alleged infringement.

The Complaint is written to alarm its target audience:  naive cable and internet subscribers.   Instead of describing facts to support a legal cause of action QOTD obfuscates its Complaint by using the words "*the defendant*" instead of "*IP address holder*" or "*COMCAST subscriber*"  or "*COMCAST customer*" or "*the person responsible for paying  for Cable and the internet thru COMCAST*."  By doing so IP subscribers believe that they are infringers even if they did not infringe or even if they know who the infringers are.   By service of process of these complaints, QOTD, can extort large sums of money from its audience….ordinary cable and internet subscribers.  Many of these subscribers make arrangements with a Plaintiff  to avoid an expensive and time consuming Copyright lawsuit.  The remaining COMCAST subscribers, perhaps unaware of infringing or unauthorized downloading or who deny having downloaded Plaintiff's movie end up as named defendants solely because they are internet subscribers.

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Page 3 of 13

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle    WA 98165
(206)361-4840

**ARGUMENT**

*Specificity is needed for Direct Infringement.*

A complaint under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq*.) may not just allude to the possibility of an infringement by a defendant.  A proper copyright complaint  must allege with specificity that the person—defendant-- copied in whole, or in part from plaintiff's work.

Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact),….(Citations omitted).

*Bell Atlantic Corp. v Twombly*, 550 US 544,  127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)

The person who pays the COMCAST bill is not necessarily the one who watches Cable or uses the internet.  Knowing only an IP address and a COMCAST customer's name and address  at a known time and date is not enough to support a copyright infringement claim. Moreover,  an IP holder, even if the IP subscriber knows or suspects who the infringer may be is not an infringer, either.  The confusion created by plaintiff  by mixing  the concept of "infringer' with  the concept of "cable customer" gnores important  factual and legal distinction between the person who pays for the internet and person who may use the internet. A person paying the cable bill is not a copyright infringer only because an assigned IP address was used at the time for  a peer-to-peer swarm in order to watch or download movies, even if it

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle    WA 98165
(206)361-4840

happened. QOTD's claim is patently speculative.

QOTD has the duty to state sufficient and relevant facts supporting its allegations that the COMCAST customer is the person engaged in copyright infringement,  Nowhere does QOTD make these factual claims against Sonny Nguyen. Nowhere in the First Amended Complaint does QOTD allege facts showing Sonny Nguyen participated in the "swarm" to download "*Queen of the Desert.*"  QOTD limited its investigation  to collecting  cable-internet subscriber information from COMCAST.  QOTD's only "information and believe" is that the defendants  are Cable-Internet subscribers.  QOTD  filed its complaint against the defendants without conducting additional investigation regarding the identify of the offenders. This is an abusive practice. This practice violates Fed. R. Civ. P. 11.  This should not be permitted.


### SECONDARY INFRINGMENT CLAIMS

The Copyright Act of 1976 (17 U.S.C. § 101 *et seq*.) imposes personal liability.  It does not expressly render anyone liable for infringement committed by another person.   *Sony v Universal City*, 464 U.S. 417, 434 (1983).  However, various Courts have developed the three well-known common-law doctrines of secondary liability, available under limited circumstances: *contributory infringement*, *vicarious infringement*, and *inducement of infringement*.

Perhaps cognizant that its claims of *direct* infringement by a subscriber is flawed, QOTD alleges in its complaint that  internet account holders are legally responsible *for others* using the IP address,  with a general secondary infringement argument.

QOTD claims Sonny Nguyen engaged in secondary infringement by "*permitting*, *facilitating* and *materially contributing* to  infringement or *failed to secure and protect*" the use

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle   WA 98165
(206)361-4840

of the assigned IP address from improper purposes such as piracy.  (1st Amended Complaint, ¶ 43, pgs 12-13)

> "In doing so, each Defendant has directly, indirectly and/or contributorily (sic) violated Plaintiff's exclusive rights…" (First Amended Complaint ,page 13, lines 4-5).

There is no authority under existing law or under a good-faith proposal for an extension of existing law that supports the imposition of liability for the conduct alleged. Importantly, the Ninth Circuit and the U.S. Supreme Court have rejected the theory of secondary infringement, except for the three important exceptions describe below.

### (1) Contributory Infringement

A person with knowledge of the infringing activity induces, causes, or materially contributes to infringing conduct of another, may be held liable as a *Contributory Infringer*. "(O)ne who, with knowledge of the infringing activity, induces causes or materially contributes to the infringing conduct of another may be held liable as a 'contributory' infringer.' " *Gershwin Publishing Corp. v. Columbia Artists management,, Inc* 443 F.2d 1159, 1162 (2d Cir. 1971) <u>at</u> 1162.

> "Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable. *See Sony v. Universal City*, 464 U.S. at 417; 1 Niel Boorstyn, Boorstyn On Copyright 10.06[2], at 10-21 (1994) ("In other words, the common law doctrine that one who knowingly participates in or furthers a tortious act is jointly and severally liable with the prime tortfeasor, is applicable under copyright law"). Contributory infringement has been described as an outgrowth of enterprise liability, *see* 3 Nimmer 1204[a][2], at 1275; *Demetrigdes v. Kaufmann*, 690 F. Supp. 289, 292 (S.D.N.Y. 1988), and imposes liability where one person knowingly contributes to the infringing conduct of another. The classic statement of the doctrine is in *Gershwin*, 443 F.2d 1159, 1162: "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a `contributory' infringer." *See also*

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Page 6 of 13

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle    WA 98165
(206)361-4840

*Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 975 (9th Cir. 1981), *rev'd on other grounds*, <u>464 U.S. 417</u> (1984) (adopting *Gershwin* in this circuit)."

*Fonovisa v Cherry Auction, Inc,* 76 F.3d 359, 264 (9th Cir., 1996).

As might be expected, virtually every word of that definition has been argued over and over and construed in one case or another.

QOTD does not allege that Sonny Nguyen had actual knowledge of others engaged in infringing activity and actively contributed to the infringement.  QOTD limits the knowledge element to some sort of *apparent knowledge* by Sonny Nguyen as the IP subscriber:

> "..that any user of the IP address would likely have been aware of the bandwidth devoted to this activity through general service slowdown throughout the observed period of activity as residential data services typically have limited capacity…"

First Amended Complaint, page 4 ¶12, line 25 – Page 5, line 1.

*Apparent* knowledge is not *actual* acknowledge required under *Gershwin*, supra. This allegation assumes that the person billed by COMCAST is a user of the internet at the time of infringing activity and can observe a "general service slowdown" at the time of the alleged downloading. This speculative presumption is too broad a stretch to jump across.  In addition, a general service slowdown is a common experience with Cable based internet services, particularly when internet traffic exceeds COMCAST design parameters for its Cable customers for a subscriber service area. It's a question of not enough bandwidth to go around for all its users at peak-user times. There is no rational jump to the conclusion that bandwidth is limited due to infringing activities. Lastly, this method of becoming "aware" that infringing activity is underway because of a service slowdown presumes the IP subscriber is unaware of the infringing activity until a  slowdown occurs, an argument against actual knowledge by the IP subscriber, if it happened.

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle    WA 98165
(206)361-4840

**(2) Vicarious Infringement**

The second theory of secondary copyright infringement liability, that plaintiff fails to

properly allege is *vicarious infringement.*

There are two elements to a claim of *vicarious infringement* are: a) the defendant

possesses a right and ability to supervise infringing conduct and b) the defendant must have an

obvious and direct financial interest in the exploitation of the copyright material. *Broadcast*

*Music, Inc.v  Behulak* 651 F. Supp. 57 (M.D. Fla 1980). Vicarious infringement results where

there has been a direct infringement by an infringer and the vicarious infringer is <u>in a position to</u>

<u>control</u> the direct infringer <u>while benefiting financially</u> from the infringement.  As an example, in

a Ninth Circuit case,  *Fonovisa Inc v Cherry Auction*, *supra,* the operator of a flea market where

counterfeit recordings were regularly sold, was found to be a vicarious infringer because the

operator  could have policed the vendors who rented booths from him but did not. The operator

made money from that booth rental as well as from admission fees from the people attending the

flea market where the known infringement occurred. The court believed that many of the people

who paid those admission fees did so to gain access to the counterfeit recordings. The court

found  the flea market operator guilty of contributory infringement with the infringer. See,"

*Metro-Goldwyn-Mayer Studios, Inc. v Grokster, Ltd*. 545 U.S. 913 (2005), fn 9.

But here, QOTD makes no claim that Sonny Nguyen, profits directly from the

infringement by another person.  QOTD  also fails to identify that other person---the direct

infringer--- who Sonny Nguyen  is suppose to supervise and how.  QOTD doesn't even claim

that Sonny Nguyen knows about the infringement.

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle    WA 98165
(206)361-4840

**(3) Inducing Infringement**

QOTD also fails to properly allege a final theory of secondary copyright-infringement liability, *inducing infringement*: "[O]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement is liable for the resulting acts of infringement by third parties." *MGM v Grokster*, *Supra* at 936-37.

As with the other two theories to impute secondary liability to Sonny Nguyen,  QOTD fails to identify a third party who (allegedly) comitted copyright infringement.  QOTD fails to describe a device that Sonny Nguyen distributes or describe a "clear expression" or other affirmative step suggesting  an intent to foster infringement by another.

By way of contrast,  in other cases, defendants have been found liable for inducting infringement by distributing electronic newsletters  by "promoting software with an ability to access and copy copyrighted music," *MGM v Grokster, supra* at 938 (2005); or by "prominently feature(ing) a list of 'Box Office Movies'"" on a website and inviting users to upload torrent files, "in other words, (the user) would be asked to upload a file that, once downloaded by other users, would lead directly to their obtaining infringing content*." Columbia Pictures Industries, Inc. v Fung*, 710 F.3d 1020, 1036 (9th Cir. 2013).

QOTD  does not allege Sonny Nguyen supplied software or, operated a website or performed any other act that can be construed to encourage, foster or induce another person  to infringe anyone's copyrighted material, let alone download a movie, "*Queen of the Desert*."

Thus, the 1st Amended  Complaint  fails to state a claim for any of the three prongs of secondary liability recognized under copyright infringement theory. Sonny Nguyen should not be

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle   WA 98165
(206)361-4840

listed as a defendant because others may have used his internet account, even assuming that a copyright violation occurred with his assigned IP address at the time and date alleged. Lastly, Sonny Nguyen should not be sued by QOTD just to learn who the infringer may be.

### SHOULD THE  COMPLAINT BE DISMISSED WITH PREJUDICE?

The procedural history makes clear that at the time of presenting this lawsuit, attorneys for QOTD were unaware of the identity of the persons engaging in the alleged exchange of data using the BitTorrent  platform.   As QOTD's attorney admits in its *ex parte* motion for expedited discovery filed March 3, 2016 (Dk 5):

> "The only way that Plaintiff can determine Defendants' actual names is from the non-party Internet Service Providers ("ISP") to which Defendants subscribe and from which Defendants obtain Internet access." (page 1, lines 13-16).

When QOTD later filed the 1st Amended Complaint, QOTD merely substituted the unknown defendant Does with names of cable and internet subscribers presumable given to it by COMCAST, each named defendant  relating to a specific IP address  for a time and date, irrespective of the nature of the relationship of the defendant- subscribers to the internet, whether they were infringers or only persons obligated to COMCAST for Cable and internet service.

As outlined above, QOTD does not allege facts sufficient to state a claim for relief. There is no reason to believe that QOTD has additional access to an   independent evidentiary basis to ethically allege more facts sufficient to cure the defects of its 1st Amended Complaint as required under rule 11 of our Federal Rules of Civil Procedure.  There would be no benefit to the parties to allow QOTD to file a 2nd amended complaint just to redescribe and reword theories of

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Page 10 of 13

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle    WA 98165
(206)361-4840

1   copyright infringement liability of COMCAST subscribers. QOTD should not be permitted to
2   use the complaint process as a discovery tool. There are adequate discovery tools in the federal
3   rules of civil procedure for that.

4

5   **SHOULD THE COURT ORDER QOTD TO SUBMITT A MORE DEFINITE**
6   **STATEMENT?**

7       Nevertheless, should the Court decline to dismiss the conclusory, ambiguous and
8   imprecise 1st Amended Complaint based on the above arguments, the Court should order QOTD
9   to submit a more definite statement under Fed. R. Civ. P. 12(e).  The Order should require
10  QOTD to describe the specific acts with particularity, which QOTD claims constitutes
11  infringement for  each subscriber to COMCAST named as a defendant.  The allegations should
12  be specific and sufficient so that each defendant does not feel he or she is guilty of infringing a
13  copyright merely because he or she subscribes to COMCAST.

14

15      **CONCLUSION**

16      This Court has consistently and summarily dismissed similar peer-to-peer based
17  complaints by finding  copyright infringement claims against defendants are conclusory if
18  based solely on the IP addresses of defendants.  In an exemplary case, this Court clearly noted:

19

20

21          [I]identifying the account holder may tell us very little about who actually downloaded
             "The Thompsons" using that IP address. As one court noted, "it is no more likely that
22          the subscriber to an IP address carried out a particular computer function … than to say
             an individual who pays the telephone bill made a specific telephone call." In re
23          BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *3
             (E.D.N.Y, May 2,2012).  In fact, it is less likely. Home wireless networks are
24

25  MOTION TO DISMISS or                          Law Office of Joseph Chalverus
    MORE DEFINITE STATEMENT                          Lake City Law Center
    BY SONNY NGUYEN                                    P.O. Box 25050
                                                    Seattle    WA 98165
    Page 11 of 13                                      (206)361-4840

1  ubiquitous, meaning that a single address can simultaneously support multiple computer
2  devices throughout the home and, if not secured, additional devices operated by
   neighbors or passerby. Thus, the risk of false positives is very real. <u>Digital Sin, Inc. v
3  Does 1-176</u>,  279 F.R.D. 239, 243 (S.D.N.Y2012). It is not clear that plaintiff could,
   consistent with its obligations under Fed. R.Civ.P.11, make a factual contentions
4  regarding an internet subscriber's infringing activities based solely on the fact that he or
   she pays the internet bill.
5
   *Thompsons Film, LLC v Does 1-194,* U.S.D.C. WDW C13-0560RLS (Doc 66, page 2)
6  (ATTACHMENT A)
7
8
9  Respectfully submitted,
10
11  DATED:August 18, 2016
12                              <u>S/ Joe Chalverus</u>
                                Joseph Chalverus
13                              Attorney for Sonny Nguyen
14
   EXHIBITS
15  A: Order: *Thompsons Film, LLC v Does 1-194,* USDC, WDW, C13-0560 RLS
16
17
18
19
20
21
22
23
24
25
   MOTION TO DISMISS or                        Law Office of Joseph Chalverus
   MORE DEFINITE STATEMENT                      Lake City Law Center
   BY SONNY NGUYEN                                 P.O. Box 25050
                                              Seattle    WA 98165
   Page 12 of 13                                  (206)361-4840

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed with the Clerk of the Court this document and attachments using the CM/ECF system, which will send notification of such filing to:

All parties of record.

August 18, 2016

S/ Joe Chalverus
Joseph Chalverus
Attorney for Sonny Nguyen

MOTION TO DISMISS or
MORE DEFINITE STATEMENT
BY SONNY NGUYEN

Law Office of Joseph Chalverus
Lake City Law Center
P.O. Box 25050
Seattle   WA 98165
(206)361-4840