UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QOTD FILM INVESTMENT LTD.,

    Plaintiff,

    v.

MARY STARR, et al.,

    Defendants.

CASE NO. C16-0371RSL

ORDER GRANTING IN PART DEFAULT JUDGMENT AGAINST MARY STARR

## I. INTRODUCTION

This matter comes before the Court on plaintiff's "Motion for Default Judgment Against [Defendant Mary] Starr." Dkt. # 52. Having reviewed the motion and the remainder of the record, the Court finds as follows:

## II. BACKGROUND

This action was filed on March 11, 2016. Plaintiff asserted copyright infringement claims against fourteen Doe defendants. Each defendant was identified only by an IP address linked to the on-line sharing of the movie *Queen of the Desert*. On May 9, 2016, the internet service provider identified the owner of each IP address, and plaintiff eventually filed an amended complaint identifying eight individual defendants by name.

Plaintiff alleges that it is the developer and producer of the movie *Queen of the Desert* and that it is the owner of the exclusive copyrights in the property. Ms. Starr, along with several other defendants, is alleged to have participated in a peer-to-peer

DEFAULT JUDGMENT – 1

network using the BitTorrent protocol[1] to download and share *Queen of the Desert* without authorization. Through this motion, plaintiff seeks default judgment against Ms. Starr including a permanent injunction, statutory damages, and costs and attorneys' fees.

### III. DISCUSSION

Federal Rule of Civil Procedure 55(b) authorizes a court to grant default judgment. The court's role in considering a motion for default judgment is not ministerial. The court must accept all well-pled allegations of the complaint as established fact, except allegations related to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where the alleged facts establish a defendant's liability, the court has discretion, not an obligation, to enter a default judgment. *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The plaintiff must provide evidence to support a claim for a particular damage amount. *TeleVideo Sys.*, 826 F.2d at 917-18; *see also* Fed. R. Civ. P. 55(b)(2)(B).

    a.   Whether Plaintiff Has Proven Copyright Infringement

Plaintiff must first show that the allegations of the amended complaint, taken as true, establish Ms. Starr's liability. Plaintiff has adequately alleged "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The entry of default on August 15, 2016, has, therefore, established Ms. Starr's liability.

---

[1] Numerous courts have described how the BitTorrent protocol works in detail. *See e.g., Purzel Video GmbH v. Biby,* 13 F. Supp. 3d 1127, 1131-33 (D. Colo. 2014); *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 162-64 (E.D. Mich. 2012); *Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 275-76 (S.D.N.Y. 2012).

DEFAULT JUDGMENT – 2

b. Whether Default Judgment Is Appropriate

Having established liability, plaintiff must also show that default judgment is warranted. Courts often apply the factors listed in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), to make this determination. Those factors are: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. *Id.*

The factors generally weigh in favor of granting default judgment in this case. Without entry of default judgment, plaintiff will be prejudiced because it will be left without a legal remedy. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). As discussed above, plaintiff has adequately alleged and shown Ms. Starr's liability. The amount at stake is also relatively modest – plaintiff seeks $2,500 in statutory damages and $3,099.57 in allocated costs and attorneys' fees. Finally, it is unlikely that Ms. Starr's failure to respond is the product of excusable neglect: plaintiff notified Ms. Starr of this lawsuit by letter in June 2016 and properly served her with the amended complaint in July 2016.

The Court acknowledges that a dispute may arise concerning material facts, including whether Ms. Starr is the actual infringer. *See In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (finding that "it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call."). Nevertheless, the Court finds that such a possibility is insufficient to outweigh the other factors weighing in favor of granting default judgment. Finally, although there is a strong policy for deciding cases on their merits (*see Eitel*, 782 F.2d at 1472), Ms. Starr's failure to respond to plaintiff's claims means that this factor does not preclude entry of

DEFAULT JUDGMENT – 3

default judgment (*see Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014)).

The *Eitel* factors generally weigh in favor of granting default judgment. The next issue is what relief should be awarded.

### c. Appropriate Relief

Plaintiff requests three categories of relief: (1) a permanent injunction, (2) statutory damages not less than $2,500, and (3) attorneys' fees and costs.

#### i. Injunctive Relief

Plaintiff first requests an injunction precluding Ms. Starr from infringing on plaintiff's rights in *Queen of the Desert* in the future. 17 U.S.C. § 502(a) permits a court to grant final injunctions to "prevent or restrain infringement of a copyright." Parties obtaining a permanent injunction ordinarily must satisfy a four part test: (1) irreparable harm; (2) lack of adequate remedies at law; (3) the balance of hardships weighs in its favor; and (4) the injunction is in the public's interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393-94 (2006). Under 17 U.S.C. § 503(b), the court may order the destruction of copies found to have been made or used in violation of a copyright owner's rights.

The Court agrees that injunctive relief is appropriate here. As in numerous other BitTorrent cases (*see e.g.,Malibu Media, LLC v. Flanagan,* No. 2:13-CV-5890, 2014 WL 2957701, at *5 (E.D. Pa. July 1, 2014)), the four elements are established. Furthermore, "[a]s a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir.1993) (citing *Nat'l Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732 (8th Cir.1986)). Consequently, the Court will enjoin Ms. Starr from infringing plaintiff's rights in *Queen of the Desert* and order her to destroy all unauthorized copies of the copyrighted work.

DEFAULT JUDGMENT – 4

### ii.  *Statutory Damages*

Plaintiff requests an award of statutory damages in the amount of at least $2,500 for the single instance of copyright infringement alleged. Although the actual economic damages associated with a lost video rental are likely minimal, plaintiff correctly points out that Congress has authorized statutory damages in significant amounts to compensate for difficult-to-prove downstream losses and to deter future infringement. *Los Angeles News Serv. v. Reuters Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quoting *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990)). Under 17 U.S.C. § 504(c)(1), the Court may award statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" for each infringed work. When considering the proper amount of damages, the court takes into account the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (citing *Landstar*, 725 F. Supp. 2d at 921). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984).

Copyright violations come in all shapes and sizes, from the unauthorized copying of a Halloween word puzzle for a child's party to the unauthorized manufacture and sale of hundreds of thousands of bootleg copies of an album. While Ms. Starr's alleged copyright violation is of concern given that it represents a theft of intellectual property, it is a relatively minor infraction causing relatively minor injury. The Copyright Act provides a range of statutory damages, and the Court finds that a recovery of $750 for participating in a BitTorrent swarm is appropriate. This award is in line with the awards made by other courts in the Ninth Circuit and appears adequate to deter Ms. Starr from

DEFAULT JUDGMENT – 5

infringing on plaintiff's copyright in the future.[2] The Court is not persuaded that a higher award is appropriate simply because certain members of the BitTorrent community are not impressed by a $750 award against someone they do not know. The judgment entered in this case, including statutory damages, attorney's fees, and costs, may be recovered by garnishing Ms. Starr's wages and/or seizing and selling her non-exempt property. This is a steep penalty for having been too lazy to go to the local Redbox or too cheap to pay a few dollars for an authorized download. If the threat of such an award is not having a deterrent effect (a fact which plaintiff makes no effort to prove), it is most likely because the chances of prosecution are too low rather than that the amount of the damage award is of no consequence to the judgment debtor.

        *iii.    Attorneys' Fees and Costs*

Finally, plaintiff seeks $2,951.00 in attorneys' fees and $148.57 in costs. *See* Dkt. # 53 at 4-5. Pursuant to 17 U.S.C. § 505, the Court "in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party."

Courts may consider several factors in making an attorneys' fee determination under the Copyright Act, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence." *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). These factors all weigh in favor of awarding attorneys' fees in this case. Plaintiff has obtained

---

[2] Plaintiff argues that a significantly higher award is necessary to force people like Ms. Starr to participate in these BitTorrent cases. Plaintiff apparently wants the Court to raise the statutory damage award to an amount that is at or above the anticipated costs of defending this action. A defendant may, however, decide that conceding liability through default is the best course of action given the nature of the claims and the available defenses. The "punishment" for that choice is the entry of default judgment and an award of damages under the governing standards. As discussed in the text, those standards lead to the conclusion that the minimum statutory penalty should apply in this case. Plaintiff offers no support for the proposition that participation in federal litigation should be compelled by imposing draconian penalties that are out of proportion to the harm caused by Ms. Starr's actions.

DEFAULT JUDGMENT – 6

success on its non-frivolous claims. Moreover, awarding fees would advance considerations of compensation and deterrence.

As for the amount of fees that should be awarded, courts begin with a "lodestar" method, which is obtained by multiplying the number of hours reasonably expended on the litigation by an hourly rate. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Plaintiff seeks $2,951.00 for 6.3 hours of attorney time and .8 hours of legal assistant work at hourly rates of $450 and $145, respectively. Plaintiff's counsel has apparently prorated the billed hours to only include those attributable to prosecuting its claims against Ms. Starr. A review of the billing summaries provided shows that counsel reasonably expended the hours specified.

Plaintiff has not presented any evidence that this is the prevailing market rate in this community, however. A review of similar cases in this district suggests that rates ranging in the $200-$350 range are more appropriate. *See e.g.*, *Broad. Music, Inc. v. Benchley Ventures, Inc., No.* C14-1023RAJ, 2015 WL 5330853, at *8 (W.D. Wash. Sept. 11, 2015) (fees of $265 and $295 more than reasonable); *BWP Media USA Inc. v. Rich Kids Clothing Co.*, LLC, No. C13-1975-MAT, 2015 WL 2124933, at *5 (W.D. Wash. May 1, 2015) ($350 per hour deemed reasonable rate); *Curtis,* 33 F. Supp. 3d at 1222 (rates ranging from $200-$320 and $150 per hour for paralegal work deemed reasonable). These cases suggest that plaintiff's counsel's rate should be reduced.

The Court has also considered other factors that bear on whether an adjustment to the lodestar calculation is warranted, such as the (1) time and labor required and (2) skill requisite to perform the legal services properly. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Numerous other courts confronted with similar BitTorrent cases have drastically reduced the amount of attorneys' fees awarded. Those opinions explain that these cases amount to something akin to "form-pleading" necessitating little, if any, legal skill or attention. *See e.g., Modern Jug Face, LLC v. Wright,* No. 2:13-CV-

DEFAULT JUDGMENT – 7

847, 2015 WL 5244461, at *3 (S.D. Ohio Sept. 9, 2015) (collecting cases and awarding $1,500 when party requested $5,678.75); *Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 913 (E.D. Mich. 2014) (awarding reasonable attorneys' fees of $555 when party requested $2,550); *Elf-Mann, LLC v. C.G. Chinque Albright*, C13-0115TOR, 2014 WL 5543845, at *11 (E.D. Wash. Oct. 31, 2014) (hourly rates reduced to $350 per hour where intellectual property expertise was not particularly relevant or necessary in default proceedings). This Court adopts similar reasoning here. This case is one of many others in this district involving practically identical allegations and legal issues. At this point, form filings and standardized procedures are the norm, and the Court will reduce counsel's hourly rate to $350 per hour, yielding an attorneys' fee award of $2,205.00.

Plaintiff's request for $148.57 in allocated costs is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part plaintiff's motion and enters default judgment against Ms. Starr. The Clerk of Court is directed to enter judgment for plaintiff and against Ms. Starr as follows:

1. Defendant Mary Starr is hereby permanently enjoined from directly, indirectly, or contributorily infringing plaintiff QOTD Film Investment Ltd.'s rights in the work *Queen of the Desert*, including without limitation by using the Internet to reproduce or copy *Queen of the Desert*, to distribute *Queen of the Desert*, or to make *Queen of the Desert* available for distribution to the public, except pursuant to lawful written license or with the express authority of plaintiff;
2. To the extent any such material exists, defendant Mary Starr is directed to destroy all unauthorized copies of *Queen of the Desert* in her possession or subject to her control;
3. Statutory damages in the amount of $750;
4. Attorneys' fees in the amount of $2,205.00 and costs in the amount of $167.07.

DEFAULT JUDGMENT – 8

Dated this 5th day of October, 2016.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge

DEFAULT JUDGMENT – 9